IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Worth Edward Cook III, #293532, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> Warden Kenneth Nelson, ) <br> ) <br> Respondent. ) <br> _____ ) | Civil Action No. 2:22-904-BHH <br><br> **ORDER** |

This matter is before the Court on Petitioner Worth Edward Cook III's ("Petitioner" or "Cook") *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) On June 30, 2023, Respondent filed an amended motion for summary judgment, to which Petitioner filed a response. (ECF Nos. 57, 66.) In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., the matter was referred to a United States Magistrate Judge for initial review.

On January 30, 2024, Magistrate Judge Mary Gordon Baker filed a Report and Recommendation ("Report") outlining the issues and recommending that the Court grant Respondent's amended motion for summary judgment. (ECF No. 70.) Attached to the Report was a notice advising the parties of the right to file written objections to the Report within fourteen days of being served with a copy. After being granted an extension of time to file objections, Petitioner filed his objections on March 7, 2024. (ECF No. 76.) For the following reasons, the Court overrules Petitioner's objections, adopts the Magistrate Judge's Report, and grants Respondent's amended motion for summary judgment.

**BACKGROUND**

Petitioner is currently incarcerated in the South Carolina Department of Corrections'

Broad River Correctional Institution. On March 4, 2016, a jury convicted Petitioner of murder, and the Honorable R. Knox Petitioner sentenced him to 35 years' imprisonment. (ECF No. 12-5 at 149, 165.)

Petitioner's murder charge stems from the death of David Diblasi in early 2013. During trial, the State presented evidence showing that Petitioner killed Diblasi after a dispute over drugs. More specifically, the State presented evidence that Diblasi's body was found buried in Petitioner's backyard; that Diblasi's DNA was found on items collected from Petitioner's home; and that Petitioner was seen with Diblasi's distinctive heroin bags a few week after Diblasi was last seen alive. The State also presented evidence that Petitioner had admitted to killing Diblasi, although in self-defense, with Petitioner claiming that Diblasi attacked him and that, during the struggle, Petitioner accidentally stabbed Diblasi in the neck. According to Petitioner, the stab would to Diblasi's neck was not fatal so Petitioner stabbed him in the eye to keep him from suffering. Petitioner explained that he, Diblasi, and another man named Rick Barnes were collecting debts owed to Diblasi on the day Diblasi died. According to Petitioner, Barnes left at one point, and he and Diblasi picked up some meth and went to Petitioner's home to smoke it. Then Diblasi left and Barnes brought Petitioner's girlfriend over to Petitioner's house. Petitioner claimed that soon thereafter, Diblasi returned to Petitioner's home, yelling and saying that people were taking advantage of him, and Diblasi demanded drugs and money he claimed he had given to Petitioner. Petitioner also claimed he saw a knife on Diblasi's person and that he rushed at Diblasi to grab the knife, but a struggle ensued, Petitioner fell, and Diblasi grabbed him by the throat while holding the knife in his other hand. According to Petitioner, his girlfriend entered the room then, and Diblasi kicked her in the stomach, following which Petitioner

grabbed the knife and stabbed Diblasi. Petitioner testified that he cleaned the room, buried Diblasi's body in the backyard, disassembled his truck and motorcycle and sold the parts, and then used Diblasi's credit card at Walmart. Petitioner's girlfriend also testified at trial, reiterating Petitioner's version of events. (*See generally* ECF No. 12-2 at 3-325; ECF No. 12-3 at 1-177; ECF No. 12-4 at 3-313; ECF No. 12-5 at 1-166.)

Petitioner filed a direct appeal of his conviction, and Appellate Defendant Susan Hackett of the South Carolina Commission on Indigent Defense represented Petitioner and filed an *Anders* brief on his behalf on February 13, 2017. (ECF No. 37-7.) In that brief, counsel raised the following issue:

> Did the trial judge err in admitting statements made by Appellant to law enforcement where (1) the police failed to scrupulously honor his invocation of his right to counsel and (2) the police coerced him to waive his rights to counsel and silence by threatening to arrest the mother of his child and place his child in the custody of social services?

(*Id.* at 5.) The South Carolina Court of Appeals affirmed Petitioner's conviction and issued a remittitur on April 24, 2018. (ECF Nos. 12-1; 37-8.)

On May 4, 2018, Petitioner filed an application for post-conviction relief ("PCR"), alleging claims of ineffective assistance of counsel, due process violations, and prosecutorial misconduct. (ECF No. 12-5 at 167-75; ECF No. 12-6 at 3-6.) Petitioner's PCR counsel, Art Aiken, later amended the application to include an ineffective assistance of counsel claim based upon trial counsel's failure to object to the trial court's omission of a permissive inference jury instruction in the jury instruction on implied malice. (ECF No. 12-6 at 19-21.) At the evidentiary hearing on Petitioner's PCR application, Petitioner's PCR counsel clarified that this was the only claim on which Petitioner wished to proceed. (*Id.* at 27.) The PCR court denied Petitioner's application following the hearing, and Petitioner

appealed. (ECF No. 12-6 at 45-54; ECF No. 12-8.) On August 11, 2021, the South Carolina Court of Appeals denied his appeal, and the remittitur was issued on September 8, 2021. (ECF No. 21-7 at 1.)

Petitioner filed the instant § 2254 petition on March 18, 2020, setting forth the following grounds for relief:

> **Ground One:** Petitioner's right to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution was violated because he is actually innocent of the charges.
> . . .
> **Ground Two:** Petitioner was denied the right to effective assistance of trial counsel, guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution.
> . . .
> **Ground Three:** Petitioner's rights to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution were violated.
> . . .
> **Ground Four:** Petitioner was denied his right to equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution.
> . . .
> **Ground Five:** Petitioner's right to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution [was violated] when the trial judge erred in admitting statements by petitioner to law enforcement where (1) the police failed to scrupulously honor his invocation of his right to counsel and (2) the police coerced him to waive his rights to counsel and silence by threatening to arrest the mother of his child and place his child in the custody of social services.
> . . .
> **Ground Six:** Petitioner was denied the right to effective assistance of trial counsel as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution because trial counsel did not object to the trial court's fail[ure] to include the permissive inference jury instructions in its jury instruction on inferred malice. Petitioner was prejudiced by counsel's ineffectiveness.

(ECF No. 1 at 6, 13, 18, 22, 26, and 29.) Respondent was ordered to file a return and memorandum in response by May 18, 2022. On April 11, 2022, however, Petitioner filed

a motion to stay, requesting that the Court stay the case until he exhausted all of his claims. (ECF No. 11.) In the motion, Petitioner explained that he filed a second PCR application, as well as an application for forensic DNA testing and a motion for new trial. At the time, his second PCR application and his motion for new trial were still pending, but his application for forensic DNA testing had been denied, and Petitioner had appealed that decision.

On April 25, 2022, Respondent filed a response in opposition to Petitioner's motion to stay. (ECF No. 12.) Petitioner replied, and Respondent then filed a motion for an extension, requesting additional time to file the return following the Court's ruling on the motion to stay. (ECF Nos. 16, 18, 19.) On November 7, 2022, Petitioner filed a motion to amend his petition. (ECF No. 25.)

On November 16, 2022, the Magistrate Judge filed a Report recommending that the Court deny Petitioner's motion to stay and motion to amend because Petitioner's unexhausted claims were actually exhausted, albeit procedurally defaulted. (ECF No. 27.) After considering Petitioner' objections, the Court adopted the Magistrate Judge's Report. (ECF No. 48.)

On June 8, 2023, Petitioner filed a motion to amend his petition, which was denied. (ECF Nos. 52, 54.) On June 30, 2023, Respondent filed an amended return and motion for summary judgment. (ECF Nos. 56, 57.) After requesting additional time to respond, Petitioner filed his response on September 25, 2023. (ECF No. 66.) The Magistrate Judge issued her Report recommending that the Court grant Respondent's motion for summary judgment on January 30, 2024. (ECF No. 70.) After requesting additional time to file objections, Petitioner filed his objections on March 7, 2024. (ECF No. 76.)

## STANDARDS OF REVIEW

### I. The Magistrate Judge's Report

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination only of those portions of the Report to which specific objections are made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). In the absence of specific objections, the Court reviews the matter only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

### II. Summary Judgment

To grant a motion for summary judgment, this Court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The Court is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

### I.  Habeas Corpus Relief

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court explained that § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. *Id.* at 404-05. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in controlling cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Id.* at 405-06. A federal habeas court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case. *Id.* at 407-08. Factual determinations made by the state "shall

be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## II.     Exhaustion and Procedural Bar

Before a Petitioner can obtain relief under § 2254, he must first clear a series of procedural hurdles.  For example, a state prisoner must exhaust his state court remedies by "present[ing] his claim to the state's highest court" before a federal court can grant relief on the merits of a claim.[1]  *Mahdi v. Stirling*, 20 F.4th 846, 892 (4th Cir. 2021); *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  Thus, "[t]he exhaustion doctrine bars a claim if it is raised for the first time in a federal habeas petition." *Mickens v. Taylor*, 240 F.3d 348, 356 (4th Cir. 2001) (en banc); *see also Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

In other words, to exhaust a federal habeas corpus claim, a petitioner must "fairly present[ ] to the state court both the operative facts and the controlling legal principles associated with each claim." *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (citation and internal quotation marks omitted).  This means that a petition must present the claim to the state court "face-up and squarely." *Id.*  Otherwise, the state will be deprived of its "opportunity to correct the constitutional violation in the first instance." *Id.* (internal quotation marks omitted).

---

[1] The exhaustion requirement exists to promote comity within our federal system.  As the Supreme Court has explained:

> Because "it would be unseemly in our dual system of government for a federal district court to upstate a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant on the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 399 U.S. 200, 204 (1950)).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default–often referred to as a procedural bar–one example of which occurs 'when a habeas petitioner fails to exhaust available state remedies and the court to which [he] would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Mahdi*, 20 F.4th at 892 (quoting *Breard*, 134 F.3d at 619) (internal quotation marks omitted). Another way procedural default occurs is when "a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for dismissal." *Breard*, 134 F.3d at 619.

Nevertheless, because the requirement of exhaustion is not jurisdictional, in very limited circumstances a federal court may consider claims that have not been presented to the highest South Carolina court with jurisdiction. *Granberry v. Greer,* 481 U.S. 129, 131 (1989). Specifically, a federal court may review a procedurally defaulted claim if the petitioner can demonstrate sufficient cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim would result in a miscarriage of justice because the petitioner is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). "Cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n. 24 (1999) (quoting *Murray*, 477 U.S. at 488). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Murray*, 477 U.S. at 495-96. Absent a showing of cause, the court is not required to consider actual

9

prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he also must show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. A petitioner must show an actual and substantive disadvantage as a result of the error, not merely the possibility of harm.

As an alternative to demonstrating cause for failure to raise a claim, a petitioner may show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show that he is actually innocent. *See Murray*, 477 U.S. at 496 (holding that a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

### III.     Ineffective Assistance of Counsel

The Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense," and that such assistance be effective. U.S. Const. Amend. VI; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A meritorious ineffective assistance claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. *Id.* at 687-98. The first part of the test, a court's evaluation of counsel's performance, must be "highly deferential" under this standard, so as not to "second-guess" the performance. *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the

challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted); *see also Fields v. Attorney Gen. of Maryland*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1476 (4th Cir. 1985). To establish prejudice and thereby fulfill the second prong of the ineffective assistance test, the challenging defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694-95. Additionally, as the Supreme Court explained in *Harrington v. Richter*:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential,"[ ], and when the two apply in tandem, review is "doubly" so [ ]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. [ ] Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

562 U.S. 86, 105 (2011) (internal citations omitted). "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* at 101 (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000). Ultimately, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

### IV.     Petitioner's Claims and the Court's Review

In its motion for summary judgment, Respondent assets: (1) ground one is not a cognizable claim for federal habeas corpus relief; (2) grounds two through five are procedurally defaulted; and (3) ground six lacks merit. (ECF No. 56.) In her Report, the

11

Magistrate Judge considered Respondent's arguments in light of the record and the applicable law and found as follows.

First, as to ground one–where Petitioner alleges that his "right to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution was violated because he is actually innocent of the charges"–the Magistrate Judge explained that claims of actual innocence standing alone do not serve as an independent basis for habeas corpus relief. (ECF No. 1 at 6; ECF No. 70 at 11 (quoting *Buckner v. Polk*, 453 F.3d 195, 199 (4th Cir. 2006).) Additionally, the Magistrate Judge noted that, even if ground one does present a cognizable claim, the key to an actual innocence claim is *new, reliable* evidence, which she found that Petitioner does not present in this case. Accordingly, the Magistrate Judge recommended that the Court grant Respondent's motion for summary judgment as to ground one of the petition.

Next, as to grounds two through five, the Magistrate Judge presented an in-depth explanation of the doctrine of procedural default and determined that Petitioner effectively exhausted only a narrow portion of the claims in grounds two and three. (ECF No. 70 at 14-15.) Specifically, the Magistrate Judge determined that Petitioner effectively exhausted only his claim that trial counsel was ineffective for failing to request (or note the omission of) an inference of malice jury instruction under state law and his due process claim that the trial court erred in admitting certain of the statements he made to law enforcement. With respect to the remainder of grounds two and three, however, the Magistrate Judge found the claims procedurally defaulted and concluded that Petitioner failed to articulate cause and prejudice for the procedural default, or to explain how the Court's failure to consider the claims now would result in a fundamental miscarriage of justice. In so

concluding, the Magistrate Judge specifically considered Petitioner's argument that the Court should excuse the procedural default based on the alleged ineffective assistance of PCR counsel but found the argument wholly unsupported and insufficient to satisfy *Martinez v. Ryan*, 566 U.S. 1 (2012). The Magistrate Judge also found no merit to the argument that the procedural default should be excused because Petitioner is actually innocent, again noting that Petitioner failed to show that any "newly discovered evidence" sufficient to establish cause and prejudice. (ECF No. 70 at 17.)

With respect to the narrow portion of ground two that Petitioner did raise in state court, the Magistrate Judge explained that the state court considered the issue and found that it lacked merit, explained more fully in connection with ground six. (*See* ECF No. 70 at 17-18.) As for the ground three claims regarding the alleged improper admission of evidence, the Magistrate Judge found no basis for relief, noting that a mere error of state law is not a denial of due process. Thus, the Magistrate Judge recommended dismissal of grounds two and three in their entirety, stating: "most of the claims in Grounds Two and Three are procedurally defaulted, and the portions that are not procedurally defaulted lack merit or are not cognizable." (*Id.* at 18.)

With respect to grounds four and five, the Magistrate Judge explained that these grounds were never properly raised in state court and are therefore procedurally barred. (*Id.*) Accordingly, the Magistrate Judge recommended that the Court grant Respondent's motion for summary judgment as to grounds two through five of the petition.

Finally, as to ground six–alleging that Petitioner was denied the right to effective assistance of counsel where counsel "did not object to the trial court's failure to include the permissive inference jury instructions in its jury instruction on inferred malice," the

13

Magistrate Judge quoted extensively from the PCR court's findings on this issue and found that the PCR court aptly considered Petitioner's claim and "determined that counsel appropriately concluded that an objection was not necessary because there is no obligation to charge the general permissive inference of malice instruction where there is no charge on the implication of malice from the use of a deadly weapon, as was the case here." (ECF No. 1 at 29; ECF No. 70 at 18-22; ECF No. 12-6 at 50-53.)  The Magistrate Judge ultimately found no error in the PCR court's evaluation of the merits of this ground and further explained that "Petitioner has submitted no meaningful argument as to how the PCR court's determination of this issue qualifies as legally or factually unreasonable, and such failure precludes relief in this Court." (ECF No. 70 at 23.)  Accordingly, the Magistrate Judge also recommended that the Court grant Respondent's motion for summary judgment as to ground six of the petition.

As a final matter, the Magistrate Judge found no reason to grant a certificate of appealability in this case.  Therefore, she recommended that the Court deny a certificate of appealability.  28 U.S.C. § 2253(c)(2).

In his objections to the Magistrate Judge's Report, Petitioner first asserts that he presented the Court with a photo of Diblasi's body taken when it was discovered that shows ice on his face, and Petitioner contends that he presented this evidence to the state court in connection with his DNA-testing case.  (ECF No. 76 at 3.)  According to Petitioner, the Magistrate Judge did not address this issue or the evidence showing the victim was frozen, and he asserts: "The victim's body being frozen when discovered in South Carolina on April 5, 2013, undermines all the evidence and testimony presented at my trial." (*Id.* at 4.)

Next, Petitioner asserts that he presented science involved in the decomposition rate

14

of the human body after death on pages 24-36 of his response in opposition to Respondent's motion, and that he also asserts that he has evidence indicating the victim was alive in another state after February 25, 2013.  (ECF No. 76 at 8-11.)  According to Petitioner, he has repeatedly claimed that evidence was withheld from him, and he appears to object to the Magistrate Judge's findings as to exhaustion and procedural default.

After a thorough and *de novo* review of the record and the applicable law, the Court finds Petitioner's objections entirely unavailing.  As an initial matter, contrary to Petitioner's assertion, the photo included on page 22 of his response to Respondent's motion for summary judgment is a grainy black-and-white photograph that does not clearly show ice or prove that Diblasi was frozen.  (ECF No. 66 at 22.)  Nevertheless, even assuming Petitioner is correct as to what the photo depicts, the Magistrate Judge indicated that she considered the "various materials" submitted by Plaintiff, but she determined that none of the materials constitute new, reliable evidence having any bearing on Petitioner's guilt or innocence.  The Court fully agrees. (ECF No. 70 at 12-13.)  For instance, the Magistrate Judge considered the scientific articles submitted by Plaintiff and found that they have no bearing on Petitioner's case.  Furthermore, the Magistrate Judge carefully considered Petitioner's assertion that the State withheld exculpatory evidence but found nothing to establish the existence of new, reliable evidence to demonstrate Petitioner's actual innocence.

After a careful review of the record, the Court finds that the Magistrate Judge appropriately summarized the facts and applied the correct principles of law, and the Court agrees with the Magistrate Judge's analysis. Importantly, Petitioner fails to explain how any of the evidence cited in his objections, including the photograph on page 22 of his

response, is "new." As the Magistrate Judge noted, "Petitioner concedes that the bulk of his 'newly discovered evidence' was available at the time of trial and was known to defense counsel." (*Id.* at 13.) Additionally, as the Magistrate Judge also concluded, Petitioner's argument of actual innocence relies "primarily on his own conclusory assertions and unsubstantiated theories, and the materials he has provided as support do little to bolster his claims. (*Id.* at 13 (citing ECF Nos. 16-3, 16-4, 16-7, 16-9, 16-10, 16-11, 16-12, 16-13, 16-14, 16-15, 16-16, 16-17, 16-19, 16-20, 66, and 66-3).) Most importantly perhaps, nowhere in his objections does Petitioner point to any factual or legal error in the Magistrate Judge's analysis of the grounds for relief in this petition.

After *de novo* review, therefore, the Court overrules Petitioner's objections and finds: (1) ground one is not a cognizable claim for federal habeas corpus relief, and, even if it is, Petitioner has failed to show new, reliable evidence of innocence to prove a free-standing actual innocence claim; (2) Petitioner is not entitled to relief on the exhausted portions of grounds two and three (related to his claim that trial counsel was ineffective for failing to request an inference of malice instruction under state law and to his claim that the trial court erred in admitting certain of the statements he made to law enforcement); (3) the remainder of grounds two and three are procedurally defaulted because Petitioner has used up his direct appeal and PCR action and has no further means of getting the state court to hear these claims; (4) grounds four and five are procedurally barred because Petitioner never properly raised them in state court; and (5) Petitioner has not shown that the PCR court's analysis of ground six (alleging ineffective assistance of trial counsel based for failure to request an inference of malice instruction) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or

was based on an unreasonable determination of the facts. Thus, for the reasons set forth in the Report and for the reasons set forth herein, the Court finds that Petitioner is not entitled to habeas corpus relief on any of the grounds asserted in his petition.

## CONCLUSION

Based on the foregoing, the Court **overrules** Petitioner's objections (ECF No. 76); the Court **adopts and incorporates** the Magistrate Judge's Report (ECF No. 70); the Court **finds moot** Respondent's motion for an extension of time to file a reply (ECF No. 78); and the Court **grants** Respondent's amended motion for summary judgment (ECF No. 57).

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
United States District Judge

March 21, 2024
Charleston, South Carolina

## CERTIFICATE OF APPEALABILITY

The governing law provides that:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies the standard by demonstrating that reasonable jurists would find this Court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484

(2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir.2001).  Here, the Court finds that the legal standard for the issuance of a certificate of appealability has not been met.  Therefore, a certificate of appealability is denied.